NORMAN B. REXFORD *et al.*

*v.*

HENRY M. BACON *et al.*

*Opinion filed February 21, 1902.*

1. WILLS—*consistent scheme of distribution will be carried out.* If the testatrix has laid down and carried out a consistent scheme of distribution and priority throughout her will, it will not be disturbed by the courts unless they are compelled to do so by the terms of the will or codicil.

2. SAME—*change of legacy, by codicil, is generally subject to same conditions as the original.* A legacy given by codicil, in addition to or in lieu of a previous legacy to the same legatee, is subject to the same conditions as to vesting, the fund out of which it is to be paid, etc., unless a different intent appears.

3. SAME—*when change of devise does not take it out of trust provisions of will.* If a will makes all legacies and devises not otherwise excepted expressly subject to the trust provisions of the will and to the provision for distribution, the fact that the codicil revokes a former bequest and substitutes a devise of land does not take such devise out of the trust and distribution provisions of the will, particularly where the fact that the testatrix knew how to accomplish such purpose is evidenced by language to that effect applied by her to another additional devise in the same codicil.

4. SAME—*when legacy is specific.* A provision in a will that "all moneys and property which I may have heretofore or which I may hereafter during my life advance, loan or give to my said sister, are to be hers absolutely," is a confirmation of all *ante mortem* gifts and creates a specific legacy, which can only be satisfied by the delivery of the notes and mortgages representing such loans, and, consequently, which does not abate proportionately with the general bequests given by the same clause of the will.

APPEAL from the Circuit Court of Cook county; the Hon. C. G. NEELY, Judge, presiding.

This was a bill filed by appellees, as executors and trustees under the last will and testament of Jane A. Myrick, deceased, for the construction of the will and codicil, and for instructions as to the distribution of the balance of the estate in their hands.

The will, in its second paragraph, gives all the property of the testatrix to the trustees in trust for certain

specified objects, which are enumerated in the ten clauses of this second paragraph.   The only clauses which need be considered here are clauses 7, 8 and 10.   Such parts of these clauses as are applicable to the controversy are as follows:

"Paragraph 2.—I do hereby give, devise and bequeath unto the said Henry M. Bacon, David Fales and Mary E. Jackson, and in case of a vacancy, to the persons becoming trustees hereunder, and to their successors, all the property and estate, real, personal and mixed, of every kind, name and nature and wheresoever situated, which I may own or in which I may have any interest at or after my decease, to be held by them and their successors, in trust only, and upon the trusts hereinafter declared, to-wit:   *   *   *

"Clause 7—In trust, to hold and pay over to such of my own relatives and friends as are hereinafter in this clause named, the sums hereinafter in this clause specified, namely:   *   *   *   To pay to my sister, Melissa D. Blood, the sum of one thousand dollars ($1000), which sum I direct to be paid to her in installments, from time to time, after my death, as she asks for it.   Also to set apart and invest for the benefit of my sister, Melissa D. Blood, the sum of fifteen thousand dollars ($15,000), and pay the income therefrom semi-annually to my said sister during her natural life, and at her death to distribute said sum of fifteen thousand dollars ($15,000), and any income therefrom in their hands, to the descendants of my said sister in equal shares, *per stirpes* and not *per capita.* All moneys and property which I may have heretofore, or which I may hereafter during my life advance, loan or give to my said sister, are to be hers absolutely, notwithstanding the above provision for her benefit.   *   *   *

"Clause 8—In trust, to hold and pay over to such of the relatives and friends of my late husband as are hereinafter in this clause named, the sums hereinafter in this clause specified, namely:   *   *   *   Upon condition that

Norman B. Rexford, of Blue Island, and his assigns, if any, or his heirs and assigns if he be not living, do, within six months after my decease, release and convey to my said trustees, in manner and form satisfactory to my said trustees, all interest and claims of said Norman B. Rexford, his heirs and assigns, in and to the undivided half part to which my late husband held a title at his death, of lands in the south-west quarter of section two (2), township thirty-seven (37), north, range twelve (12), east, in Palos, in said Cook county, I direct my said trustees, after said condition has been complied with, to set apart, invest and hold the sum of ten thousand dollars ($10,000), and to pay the income thereof semi-annually to the children of the late Jennie Rexford, formerly wife of said Norman B. Rexford, or to the survivor of them, share and share alike. My said trustees, and their successors in trust, shall have power, from time to time, after this bequest takes effect, to expend so much of the principal of said sum of ten thousand dollars ($10,000) for the care, comfort and maintenance of the children of said Jennie Rexford, or any of them, as the said trustees shall, in their discretion, deem best. If said children shall all die without leaving descendants, then upon the death of the survivor of said children the remainder of said fund of ten thousand dollars ($10,000) shall become a part of my residuary estate. Should either one or more of said children die leaving descendants, whether before or after my own death, one-fifth of that part of said fund remaining unexpended shall be paid to the descendants of each of said deceased children *per stirpes*, thereby abating, proportionately, the income which the surviving children shall receive, and the remainder of said sum of ten thousand dollars ($10,000) shall upon the death of the survivor of said children become a part of my residuary estate. * * *

"Clause 10—Should my estate and property not be sufficient, in amount or value, to satisfy and discharge

all the devises and bequests specified in the first nine clauses of this the second paragraph of my will, it is my intention that such devises and bequests shall have priority in the following order, namely: First, the provision for the payment of all my just debts, and the expenses of my funeral, and the costs of administration of my estate; second, the devises and bequests specified in clauses two (2), three (3), four (4), five (5) and six (6) hereinabove; third, the bequests and legacies specified in clause seven (7) of this paragraph of my will; fourth, the bequests and legacies specified in clause eight (8) of this paragraph of my will; fifth, the bequest specified in clause nine (9) of this paragraph of my will."

There was a codicil to this will which made a number of changes in the provisions of the will. It is as follows:

"I, Jane A. Myrick, of Chicago, Illinois, having heretofore made and published my last will and testament, dated February 3, 1892, which is hereto attached and is made a part hereof, being now of sound mind and memory, do make, publish and declare the following, by way of codicil, to my said will, namely:

"I give, devise and bequeath to my adopted daughter, Mary E. Jackson, all my real estate and personal property in St. Joseph township, Berrien county, Michigan, the personal property to be hers absolutely and the real estate to be used and enjoyed by her for and during her natural life, and after her death to go and belong to her four children, Lillian, Jennie, Anna and Mary, in equal shares, absolutely. This provision to be in addition to all other provisions in my said will for my said adopted daughter and her children; and it is my will that the above property pass direct to her and her children, and not to my trustees under the will.

"I hereby reduce the bequest in trust for my sister, Melissa D. Blood, mentioned in clause 7 of paragraph 2 of my said will, to the sum of $10,000, and authorize my trustees for the time being to use part of the principal of

the fund, from time to time, for the support and comfort of my said sister, in addition to the income, as they may deem necessary.

"I hereby revoke the bequest to Mary J. Hill mentioned in said clause 7, and reduce the bequest to Eliza Hill in said clause mentioned to $1500. I increase the bequest to Louisa M. Myrick so that it shall be $5000, and I revoke the bequest of $300 to Pamelia Boss.

"I hereby revoke the following bequests contained in clause 8 of said paragraph 2 of my said last will, namely: The bequests to Jennie and Mary, daughters of Lucy Ann Shantell; the bequests to the children of Mrs. Sally Baldwin; the bequests to the children of the late Willard B. Smith; the bequest to the daughters of Lucius O. Myrick; the bequest in trust for the children of the late Jennie Rexford, wife of Norman B. Rexford; the bequest to Merrill Kyle; the bequest to the children of the late Mrs. Lucy Bentley; and I hereby reduce the bequest to Marcus Baldwin, mentioned in said clause 8, to two thousand dollars ($2000); and I also reduce the bequest to Mrs. Amelia Duntley, mentioned in said clause 8, to three thousand dollars ($3000); and I also reduce the bequest to Orrin Kyle from $1500 to one thousand dollars ($1000).

"I hereby give, devise and bequeath to the children of the late Jennie Rexford, formerly wife of Norman B. Rexford, who shall be living at my death, the lands belonging to me in section 2, town 37, in Palos, Cook county, Illinois, and other property to be selected by my executors of the value of $5000, such valuation to be made by my executors and fixed by them, or by my trustees, or my said trustees may pay money for said $5000 instead of other property, if they shall deem best.

"Witness my hand and seal this tenth day of June, A. D. 1896.      Jane A. Myrick. [Seal.]"

The appellees, who were also executors of the will, administered the estate in so far that they complied with clauses 2, 3, 4, 5 and 6 of the second paragraph of the

will. The property and assets of the estate remaining in the hands of the trustees applicable to the execution of the trusts created by clauses 7, 8 and 9 of the second paragraph of the will, and by the provisions in the codicil for the children of Jennie Rexford, were found by the court not to exceed in value the sum of $24,000. The total amount disposed of by the testatrix under clause 7, as changed by the codicil, would amount to $75,300 and under clause 8 to $50,500, so that there is not a sufficient amount left to pay more than one-third of the gifts under clause 7.

At the time of the testatrix's death there were living five children of Jennie Rexford, two of whom have since died intestate, leaving them surviving their father, Norman B. Rexford, and their brothers, Charles Barton Rexford and Frederick Kyle Rexford, and their sister, Susan Florence Rexford, as their heirs-at-law and next of kin, the appellants. The father was appointed administrator of the estates of his deceased children, and as such filed a petition in the probate court to compel appellees, as executors of the estate of Jane A. Myrick, deceased, to comply with the terms of the codicil in reference to the Rexford children, claiming that the gift of the land was not subject to the trust provisions in the will, and that the rule of preferences in clause 10 did not apply. The petition was denied and an appeal taken to the circuit court, but the further prosecution thereof was enjoined in this suit. Melissa D. Blood also petitioned the probate court for an order compelling appellees to surrender to her the notes and mortgages given by her to the testatrix prior to her death, which petition was allowed, and appellees were ordered to surrender said notes and mortgages to her upon the payment to them of their expenses on account of the property mortgaged. From this order appellees took an appeal to the circuit court.

To settle all the questions arising on these petitions, and some other matters, appellees filed their bill herein,

setting up the claims of the various parties. They have been discharged by the probate court as executors and hold the title to the remaining undistributed portion of the estate as trustees. The circuit court decreed that the provisions in the codicil for the benefit of the Rexford children were subject to the scheme of preferences in clause 10; that the trustees took title to the property therein named, and that, as there was a deficiency of assets and nothing left for distribution to beneficiaries under clause 8, the Rexfords were entitled to nothing under the will and codicil. In reference to the provisions for Melissa D. Blood, the court found that the gift of $1000 was governed by clause 10 and had no priority over the other beneficiaries in clause 7, and should abate *pro rata* with them; that the note and mortgages of Melissa D. Blood in the hands of the trustees were not a part of the estate given to the trustees, but should be turned over to her. Appellees have already paid Mrs. Blood $800 on her legacy. They have assigned numerous cross-errors.

RUNYAN & RUNYAN, for appellants.

GEORGE M. WILSON, (HENRY M. BACON, of counsel,) for appellees Henry M. Bacon, David Fales and Mary E. Jackson.

JOHNSON & MORRILL, and RALPH W. PARLIMAN, (ROBERT W. MILLAR, of counsel,) for appellee Melissa D. Blood.

WILLIAM LATHROP MOSS, guardian *ad litem* for minor appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

As far as appellants are concerned, the only question to be determined here is whether the gifts in the codicil to the Rexford children are absolute and unconditional or whether they are subject to the rule of preferences established by the testatrix in clause 10 of the will. Ac-

cording to this rule all gifts in clauses 2 to 6 inclusive are to be first fully met, then follow in order those in clauses 7, 8 and 9. The gifts to the Rexford children are in clause 8. The gifts in clause 7 are more than enough to exhaust the remainder of the assets. So, unless it can be determined that the provisions of the codicil as to the Rexford children are not subject to the provisions of clause 10, there will be nothing for the gifts to the Rexfords to operate on.

The codicil in express and apt terms revokes the bequest in trust for the children of the late Jennie Rexford, and then gives them (using the language of the codicil) "the lands belonging to me in section 2, town 37, in Palos, Cook county, Illinois, and other property to be selected by my executors of the value of $5000, such valuation to be made by my executors and fixed by them, or by my trustees, or my said trustees may pay money for said $5000 instead of other property, if they shall deem best." It will be noticed that the gift to the trustees in paragraph 2 of the will is as comprehensive as language can make it, of all the property and estate of the testatrix, all to be in trust, however, upon the trusts declared in the will. It is contended by appellants that the language of the codicil in reference to the Rexford gifts is at variance with this language of the will, and as both cannot stand, the latter must prevail, as being the latest expression of the testatrix's will.

The cardinal doctrine in the interpretation of wills is to ascertain the testator's intention. If the intention as expressed in one part of the will can be carried out without doing violence to the language of the will in another part, it is the duty of the court to so construe the will as to give all parts of the will effect. This principle is so elementary that it is unnecessary to refer to authorities. It is plain that the testatrix intended all of her property to vest in her trustees. It is also plain that she had a very definite and well defined scheme of preferences.

The beneficiaries in clauses 3, 4, 5 and 6 are her daughter and her daughter's children. These are to be paid first. The beneficiaries in clause 7 are her own relatives and friends. They are to be paid next. The beneficiaries in clause 8 are her husband's relatives and friends. They come next in the order of payment. Last of all comes the Chicago Orphan Asylum, in clause 9. If the estate was not sufficient to pay all, it will be seen that her own friends and relatives were to be preferred to her husband's friends and relatives. Where the testatrix has laid down and carried out a consistent scheme of distribution throughout, it will not be disturbed by the courts unless they are compelled to do so by the very terms of the will or codicil.

The codicil makes many changes in the provisions of the will. It first makes an additional gift of real and personal property to the daughter, adding to this gift the words, "It is my will that the above property pass direct to her and her children, and not to my trustees under the will." Then follow changes in clause 7, and then changes in clause 8. After making these changes in clause 8, follows the gift to the Rexfords, but without any direction that this property shall pass directly to them and not to the trustees under the will. There would be no inconsistency in this property passing to the trustees, to be by them held and administered until such time as they would, by the terms of the will, be called on to transfer the same to the beneficiaries.

In *Jenks* v. *Jackson*, 127 Ill. 341, it was held that there was a gift in trust of all of a certain property to the trustee, to be held by him until he had set apart and allotted this property to the beneficiaries, and that then the title passed to the beneficiaries or to their special trustees. It was said in this case (p. 350): "The rule which controls all others in the interpretation of wills is, that the intention of the testator or testatrix, to be gathered from the entire will, must govern. Such inten-

tion is not to be ascertained from any particular word or expression used in the instrument, but is to be collected from all the words and all the provisions considered as a whole. At the same time, if it is possible, full effect must be given to every word and every clause of the will. The rejection of one clause to uphold another is · a desperate remedy, to be resorted to only in case of necessity. While, where two clauses are diametrically opposed to each other and are wholly irreconcilable, the later must prevail, on the presumption it was intended to modify or abrogate the former provision, yet such later clause, if such a construction can fairly be given it, should be deemed to affirm, and not to contradict, the earlier clause. So, also, while the general rule is that words used in one part of a will must be understood in the same sense when used elsewhere in the same instrument, yet where there is something in the context which makes a different meaning imperative, as that otherwise the actual intention of the testator or testatrix would be defeated or a prior provision expressed in clear and decisive terms would be rendered inoperative, the courts will presume such words were used in different senses, when such different senses are not strained or unnatural, do no violence to the language used, lead to a reasonable conclusion and harmonize otherwise inconsistent provisions."

It is clear that the gift to the Rexfords in the codicil was in lieu of the one in the will, revoked by the same codicil. A legacy given in addition to or in lieu of a previous legacy, to the same legatee, is generally subject to the same conditions as the previous legacy with respect to vesting, the fund out of which it is payable, etc., unless a different intent appears. (18 Am. & Eng. Ency. of Law,—2d ed.—730.) That the testatrix knew how to take a gift out of the general scheme of the will is plainly shown by the additional gift to her daughter, Mary E. Jackson, in the codicil, by the words: "It is my

will that the above property pass direct to her and her children, and not to my trustees under the will." No such words are found in the gift to the Rexfords. It is true, the gift begins with the words, "I give, devise and bequeath," but so does the gift to Mary E. Jackson, and no conclusion can, we think, be drawn from these words which would exempt the gift from the general scheme of the will. If the testatrix had intended to make the Rexford gift absolute and unconditional, the other parts of the codicil show that she knew how to do it. Neither can the fact that the devise of the land is specific avail the appellants anything. The property, funds and assets are exhausted before the beneficiaries under clause 8 are in a position to have preferences among themselves. If it were a question of preference, only, as between distributees under clause 8, such specific devise might be effective.

The cross-errors assigned by appellees are in regard to the disposition made by the court in relation to the interests of Melissa D. Blood. One of the bequests of clause 7 is: "To pay my sister, Melissa D. Blood, the sum of $1000, which sum I direct to be paid her in installments, from time to time, after my death, as she asks for it." There is no provision anywhere in the will making this gift preferential to any others given in the same clause, and the natural inference would be, that all of the gifts in this clause, in case of any deficiency of assets, would have to abate proportionately, including this gift to Mrs. Blood.

But it is contended that the words, "to be paid her in installments, from time to time, after my death, as she asks for it," indicate a preference over the other gifts in this clause. In the third paragraph of the will the testatrix provides that the various legacies and bequests shall be paid as soon as possible, but delay in making payment shall not postpone the vesting of the same, and that no legacy shall bear interest, except those given

in trust.   This legacy to Mrs. Blood is payable to her "as she asks for it," and not "as soon as possible," as the others are.   The time of the payment of this legacy is to be determined by the beneficiary; the time of the payment of the others is at the convenience of the trustees. We do not think that this indicates a preference.   The third section of the tenth clause gives no intimation of any preference among the donees in that clause.

Appellees further contend that the notes and mortgages of Mrs. Blood to the testatrix that came to their hands as executors were part of the estate comprehended in the general gift of the estate to the trustees, and that the gift of them to Mrs. Blood should abate proportionately, the same as the other gifts in clause 7.   The language of the will is: "All moneys and property which I may have heretofore, or which I may hereafter during my life advance, loan or give to my said sister, are to be hers absolutely, notwithstanding the above provision for her benefit."   This was a declaration by the testatrix that what she had already given her sister or would yet give her before her own death was to be hers absolutely, notwithstanding the generous provision she had just made for her benefit in giving her the income of $15,000 for life.   This was a confirmation of all *ante mortem* gifts and an absolute gift of all loans.   We think this gift was a specific legacy, being a gift of a specific part of the testatrix's estate, identified and distinguished from all other things of the same kind, and which could only be satisfied by the delivery of the particular thing,—that is, the notes and mortgages representing such loans.   (18 Am. & Eng. Ency. of Law,—2d ed.—714.)   Specific legacies do not abate in favor of general legacies.   This is the only specific legacy in clause 7, all the others being general, and it should not be held to abate in the same proportion as such general legacies given under the same clause.

Appellants advanced Mrs. Blood $800, from time to time, on her legacy of $1000, as she asked for it.   They

claim that this sum should have been allowed them, as they paid it out in the utmost good faith, not knowing that there would be a deficiency of assets until after the sale of the real estate of the testatrix showed a great shrinkage in values. The codicil, in reducing the bequest in trust for Mrs. Blood to $10,000, authorizes the trustees to use part of the principal of that fund, from time to time, for her support and comfort, in addition to the income, as they may deem necessary. Taking all the equities of the case into consideration, we are of the opinion that the circuit court should have allowed appellees so much of this amount as they may have overpaid Mrs. Blood on the assumption the estate would be sufficient to pay out the gifts in clause 7 in full, and charged the same on the trust fund of $10,000 created for her benefit.

The cross-errors of appellees are to this extent held to be well assigned and the decree is to this extent reversed, but is in all other respects affirmed, and the cause is remanded to the circuit court with directions to enter a decree in accordance with this opinion.

*Affirmed in part and in part reversed and remanded.*