2021 IL App (2d) 200625-U
No. 2-20-0625
Order filed July 27, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF CHARLES CAMPBELL | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 19-CH-724 |
| | ) | |
| | ) | Honorable |
| (Patrick Smith, Petitioner-Appellee v. Mary | ) | John A. Noverini, |
| Crafton, Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The Appellate Court affirmed the judgment of the trial court, holding that the language of the Charles Campbell Family Trust unambiguously gave the respondent a life estate in the residence where she lived with the settlor prior to his death. The Appellate Court held that the power to direct the sale of the residence and to use the proceeds did not enlarge that life estate to a fee simple interest.

¶ 2   Respondent, Mary Crafton, appeals from an order of the circuit court of Kane County granting summary judgment in favor of petitioner, Patrick Smith, in this dispute over the terms of a trust created by the decedent, Charles Campbell. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    When Campbell died on May 7, 2019, he was living with respondent in a single-family residence (the residence) in Batavia, Illinois. The residence was owned by the Charles Campbell Family Trust (family trust). Campbell had conveyed the residence into the family trust in 2018. During his lifetime, Campbell was the trustee. Petitioner, who is Campbell's nephew (Campbell had no children), is the successor trustee. In section 4.01 of the family trust, Campbell made certain specific distributions of the trust property to respondent, and in section 4.02, Campbell provided that the remaining trust property would be distributed to petitioner. After Campbell's death, a dispute arose between the parties over respondent's claim to the residence.

¶ 5    On September 25, 2019, petitioner filed a "petition for instructions" in the circuit court. Petitioner alleged the following. Section 4.01 of the family trust gave respondent the "lifetime right" to live in the residence. Section 4.01 further provided that respondent had the lifetime right to "direct the sale of the real estate at the fair market value and purchase her personal primary residence with the proceeds from the sale." In addition, section 4.01 provided that respondent was to receive certain investment accounts "free of trust." Petitioner asked the court to determine (1) whether respondent had a life estate in the residence and (2) whether the trust retained ownership of the sale proceeds and replacement real estate should respondent direct the sale of the residence.

¶ 6    The parties deposed Brandon Ayers, who was the attorney who drafted the family trust. Under questioning from petitioner's attorney, Ayers testified that he first met Campbell in 2014. He was then an associate of the attorney who drafted Campbell's original trust. Ayers next met Campbell in 2018, when Campbell wanted to make changes to his "estate plan." That meeting took place at the residence. According to Ayers, respondent was present but was "in and out" of the meeting. Ayers testified that Campbell wanted to make sure that respondent had a place to live and enough money to provide for herself for the rest of her life. Ayers testified that Campbell directed

that petitioner be "taken care of with everything else." After Campbell's death, Ayers explained to respondent that she had a life estate in the residence. According to Ayers, respondent disagreed and said that the residence was "hers." Respondent protested that she had taken care of Campbell and that he would have wanted the residence to be "hers." Ayers testified that respondent became angry when he explained that Campbell left her only a life estate.

¶ 7    In response to questioning by respondent's attorney, Ayers testified that (1) a life estate and a power of disposition are different things, and (2) the 2018 family trust does not provide for the disposition of the residence should respondent cease living there.

¶ 8    After Ayers' deposition, petitioner filed a motion for summary judgment, arguing that respondent had solely a life estate in the residence. The court granted that motion. The court found that there was no genuine issue of material fact. The court also found that (1) the family trust was the "operative document," as it was the "last expression" of Campbell's intent, (2) the family trust owns the residence, and (3) respondent is not entitled to ownership of either the sale proceeds or the home purchased with those proceeds should she direct the sale of the residence. Respondent filed a timely notice of appeal.

¶ 9                                    II. ANALYSIS

¶ 10    Respondent maintains that the family trust grants her "more than a life estate" in that she is also granted a lifetime power to direct the sale of the residence and to use the proceeds of that sale to purchase a replacement residence. Respondent urges that the plain language of the family trust is unambiguous. However, if it is ambiguous, she argues, we should look to Campbell's since-revoked 2014 trust and its 2015 amendment, as well as to Ayers' deposition testimony to the effect that a power of disposition is different from a life estate.

¶ 11    According to respondent, the 2014 trust granted her a life estate in the residence and further provided that, if she ceased living in the residence, it was to be distributed equally to herself and petitioner. Respondent asserts that the 2015 amendment to that trust granted her a life estate in the residence but provided that, should she cease living in the residence, it would be distributed solely to petitioner. Respondent argues that Ayers' deposition testimony confirms that the 2018 family trust does not provide for the disposition of the residence should she cease living there and that a lifetime power of direction is something other than the grant of a life estate. From these facts, respondent concludes that, by executing the family trust in 2018, and revoking the 2014 trust, Campbell intended to give her ownership of the residence and any sale proceeds, as well as any replacement home, should she direct the sale of the residence.

¶ 12    The purpose of construing trusts is to ascertain the settlor's intent from the trust as a whole and to give effect to that intent unless it is against public policy. *Stein v. Scott*, 252 Ill. App. 3d 611, 614 (1993). In construing trusts, courts use the same rules of construction that apply to wills and contracts. *Stein*, 252 Ill. App. 3d at 614. Courts determine the settlor's intent according to the plain language of the document itself. *Stein*, 252 Ill. App. 3d at 614. Extrinsic evidence is admitted to aid interpretation only if the trust language is ambiguous and the settlor's intent cannot be ascertained. *Stein*, 252 Ill. App. 3d at 614. Ambiguity exists only if the language is reasonably susceptible to more than one interpretation. *Stein*, 252 Ill. App. 3d at 614. A contract is not ambiguous merely because the parties disagree on its meaning. *Stein*, 252 Ill. App. 3d at 614.

¶ 13    Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits, when viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.

*Koulogeorge v. Campbell*, 2012 IL App (1st) 112812, ¶ 21. We review *de novo* the trial court's decision on summary judgment. *Koulogeorge*, 2012 IL App (1st) 112812, ¶ 21.

¶ 14    Preliminarily, we address petitioner's arguments directed against respondent's brief. Petitioner argues that respondent's statement of facts is deficient for failing to include Ayers' deposition testimony. Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) provides that the appellant's brief shall contain the facts "necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record ***." Although respondent omits Ayers' testimony from her statement of facts, she supplements the facts with his testimony where necessary in her arguments. As the facts are neither complex nor voluminous, the omission does not hinder our review. Consequently, we decline to strike respondent's brief. See *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005) (where statement of facts substantially complied with supreme court rule and violations did not hinder appellate review, court did not strike the brief in whole or in part).

¶ 15    Petitioner also argues that respondent failed to present a complete record, where she provided no bystander's report of the remote hearing on the motion for summary judgment. The appellant has the burden to present a sufficiently complete record of the trial court proceedings to support her claim of error, and in the absence of such a record, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Because we conduct a *de novo* review of the entire record in reviewing a grant of summary judgment, the trial court's reasons for its ruling are not necessary for effective appellate review. *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115 (1993). In reviewing a grant of summary judgment, we must determine whether there are disputed issues of material fact or errors of law. *Makowski*, 249 Ill. App. 3d at 115. In making that

determination, the reviewing court can rely on any grounds called for by the record and is not bound by the trial court's reasoning. *Makowski*, 249 Ill. App. 3d at 115. Consequently, we reject petitioner's argument that the record is insufficient for review.

¶ 16    Petitioner next argues that respondent fails to present a coherent legal argument for the reversal of the trial court's order in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). It is well settled that the appellate court is entitled to a well-reasoned argument, with authority for such argument. *1212 Restaurant Group, LLC v. Alexander*, 2011 IL App (1st) 100797, ¶ 51. Arguments inadequately presented on appeal are forfeited. *Alexander*, 2011 IL App (1st) 100797, ¶ 51. Here, petitioner's criticism is well taken. In her brief, respondent argues vaguely that she has "more than a life estate" without ever spelling out precisely what interest she is claiming or what "more than a life estate" means. However, from the context, we discern that respondent claims that (1) the power to direct the sale of the residence is itself a property interest and (2) the power of disposition confers ownership of the residence, the right to proceeds from its sale, and ownership of a replacement residence. At oral argument, respondent confirmed that this is, indeed, her contention.

¶ 17    Section 4.01 of the family trust provides in relevant part: "[Respondent] has a lifetime right to live in the real estate located at 2S348 Meadow Drive, Batavia, IL 60510 and direct the sale of the real estate at fair market value and purchase her personal primary residence with the proceeds from the sale." Thus, respondent's right to live in the residence, to direct its sale, and purchase a replacement residence using the sale proceeds are all subject to the requirement that those events occur during her lifetime. This language is unambiguous,[1] making resort to construction aids

---

[1] Respondent claims that petitioner argued before the trial court that the language of the

unnecessary. See *Stein*, 252 Ill. App. 3d at 614. Nevertheless, respondent argues that the trial court considered extrinsic evidence, specifically Ayers' deposition testimony. Even though the introduction to the court's order granting summary judgment contains rote language that it considered all of the "pleadings, depositions and admissions on file," the court did not find that the family trust was ambiguous. Even if the trial court found an ambiguity, we are not compelled to adopt that conclusion, as we conduct a *de novo* and independent review of the four corners of the document. See *Ford v. Dovenmuehle Mortgage, Inc.*, 273 Ill. App. 3d 240, 245 (1995) (reviewing court is not compelled to adopt other courts' determinations as to a document's ambiguity).

¶ 18     Even if we were to determine that the trust language is ambiguous, we reject respondent's argument that Campbell's since-revoked 2014 trust and the 2015 amendment to that trust are relevant. Respondent cites *Bollman v. Pehlman*, 352 Ill. App. 3d 1203, 1205 (2004), for the proposition that the court may consider the circumstances surrounding a trust's execution in determining the settlor's intent. Here, Campbell executed the family trust in 2018. The provisions of the 2014 trust and its amendment in 2015 are hardly "circumstances surrounding" the making of the 2018 family trust.

¶ 19     Respondent also relies on *Ward v. Caverly*, 276 Ill. 416 (1917). According to respondent, *Ward* stands for the proposition that courts are "entitled to hear such extrinsic evidence as will put them in the place of the testator." What *Ward* actually said is that the testator's intention "must be found by construing the words employed by the testator in the will itself in the light of surrounding

---

family trust was ambiguous. However, after petitioner deposed Ayers, he filed a motion for summary judgment arguing that respondent's sole interest is a life estate.

circumstances, the court being entitled to hear such extrinsic evidence as will put it in the place of the testator." *Ward*, 276 Ill. at 419. The court in *Ward* cited *Abrahams v. Sanders*, 274 Ill. 452 (1916), in which the court elaborated on the nature of the extrinsic evidence that is admissible to show the circumstances surrounding the making of a will. "[I]n construing a will, evidence of the testator's mind at the time he executed it—whether he lived with his family, the state of his property and of his family—was admissible." *Abrahams*, 274 Ill. at 456-57. The court made clear that the extrinsic evidence related to " 'the circumstances attending the execution of the will ***.' " *Abrahams*, 274 Ill. at 457 (quoting *Hawhe v. Chicago & Western Indiana Railroad Co.*, 165 Ill. 561, 564 (1897)). The court in *Ward* also cited *O'Hare v. Johnston*, 273 Ill. 458, 466 (1916), where the court said that "The court, in construing a will, is not bound to shut its eyes to the facts under which the document was made." Thus, *Ward* does not support respondent's position that we should consider Campbell's 2014 trust and its 2015 amendment.

¶ 20    Further, section 4.01 of the 2018 family trust revoked the 2014 trust and its 2015 amendment relating to the disposition of the residence. See *Lasier v. Wright*, 304 Ill. 130, 140-41 (1922) (later inconsistent will revokes former wills). The 2014 trust provided that, if respondent ceased living in the residence, she became a remainderman along with petitioner. The 2015 amendment eliminated respondent as a remainderman if she ceased living in the residence. By contrast, the family trust did not provide for the situation where respondent ceased living in the residence. Rather, the family trust gave respondent the lifetime power to direct the sale of the residence and to purchase a replacement home for herself with the proceeds. The family trust named petitioner as the remainderman. Even were we to hold that the family trust is ambiguous, we would consider Ayers' testimony that Campbell intended to leave respondent only a life estate

dispositive of Campbell's intent. Thus, we agree with the trial court that the family trust is the last expression of Campbell's intent.

¶ 21    The parties do not dispute, and we agree, that respondent has a life estate in the residence. This life estate is accompanied by a power to direct the sale of the residence during respondent's lifetime. As such, it is a restricted power of disposition. See *Woods v. Seymour*, 350 Ill. 493, 496 (1932) (a deed reserving a life estate in the grantors and conferring upon the grantee the authority to sell and convey the lands any time after the grantors' death but during the grantee's lifetime gave the grantee a restricted power of sale). Contrary to respondent's unsupported assertion, there is a distinction between a power and a right of property. *Ducker v. Burnham*, 146 Ill. 9, 19 (1893). "A power of disposition does not imply ownership, but is a mere authority conferred by the will." *Ducker*, 146 Ill. at 19. In other words, even if the power of disposition in our case were absolute rather than restricted, such a power does not enlarge a life estate into an estate in fee. See *Powers v. Wells*, 244 Ill. 558, 568 (1910). Even where there is a power to convey the fee, as was found in *Hamlin v. U.S. Express Co.*, 107 Ill. 443, 449 (1883), if that power is annexed to a life estate, the limitation will control the operation of the power to prevent it from enlarging the life estate to a fee. *Hamlin*, 107 Ill. at 448. Thus, respondent's contention that the power to direct the sale of the residence gives her ownership of the residence and the proceeds of any sale, including a replacement residence, is entirely without merit.

¶ 22    Further, for a power of disposition to "defeat" a life estate, that is, to enlarge it to a fee simple interest, the power must be capable of being exercised, not only during the devisee's lifetime, but also by will upon his or her death. *Woods*, 350 Ill. at 497. In support of this premise petitioner cites *In re Estate of White*, 2020 IL App (4th) 190385, ¶ 13, where the court noted that any disposition under a will occurs after the testator dies. Thus, in *White*, the court held that a

power of disposition that was limited to the devisee's lifetime did not grant a testamentary power of disposition. *White*, 2020 IL App (4th) 190385, ¶ 14. In *Burkholder v. Burkholder*, 412 Ill. 535, 538-39 (1952), upon which petitioner also relies, our supreme court held that the language "to be used by [wife] and disposed of during her natural life" limited the power of disposition to the wife's lifetime and precluded disposition by will. Here, respondent's power to direct the sale of the residence is unequivocally limited to her lifetime. Plainly, as in *White* and *Burkholder*, respondent cannot exercise that power after her death. Consequently, respondent's lifetime power to direct the sale of the residence does not defeat her life estate.

¶ 23    Respondent's reliance on *Gaston v. Hamilton*, 108 Ill. App. 3d 1145 (1982), is misplaced. In *Gaston*, the testator bequeathed a life estate in his real property to his wife, Eula, accompanied by Eula's lifetime power to sell the real estate and use the proceeds. *Gaston*, 108 Ill. App. 3d at 1146-47. The testator's will declared that, after Eula's death, the property, "provided it has not been sold by my wife," went to his two children. *Gaston*, 108 Ill. App. 3d at 1147. During her lifetime, Eula sold the real estate to a coal company. *Gaston*, 108 Ill. App. 3d at 1147. The children contended that Eula, as a life tenant, could not defeat their interests. *Gaston*, 108 Ill. App. 3d at 1148. The appellate court noted that this was the general rule, but it held that the words "provided it has not been sold by my wife" subjected the vested remainder to divestment upon Eula's exercise of her power of sale. *Gaston*, 108 Ill. App. 3d at 1149. Here, the family trust contains no such divestment clause.

¶ 24    Respondent argues that, because section 4.01 of the family trust does not contain a gift of the residue to the remainderman, Campbell intended to give her ownership of the residence and the proceeds of any sale of the residence, including a replacement residence. We disagree. Respondent has a power to direct the trust to sell the residence. Clearly, that contemplates that the

family trust remains in title. This is reinforced by three things. First, the residence must be sold for fair market value. A life tenant can convey only the estate that she has. *Gibbs v. Gerdes*, 291 Ill. 490, 497-98 (1920). Prospective purchasers might not be willing to pay fair market value for only a life estate. Second, section 4.01 of the family trust explicitly says that respondent can use the proceeds of any sale only during her lifetime for the limited purpose of purchasing a replacement home. Distribution of the remainder of the trust property is provided for in section 4.02. Third, section 1.05 of the family trust provides that the trust assets be free of claims of any beneficiary's creditors. If respondent were in title, the residence would be subject to the claims of her creditors. In sum, nothing in the language of section 4.01 evinces an intent to divest the remainder.

¶ 25    Moreover, if Campbell intended to make an outright gift of the residence to respondent, he could have done so in plain language as he did when leaving his Edward Jones investment account and his bank account to respondent. Paragraph 2 of section 4.01 provides: "[Respondent] shall receive Edward Jones Investment account and Old Second Bank checking account proceeds outright, free of Trust."

¶ 26    Lastly, respondent contends that the trial court's ruling requires us to add language to section 4.01 to give effect to the ruling. In her opening brief, respondent does not specify what language must be added. We, therefore, deem this argument forfeited for failure to present a cogent legal argument. See *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 98 (mere contentions without argument or citation to pertinent legal authority do not merit consideration on appeal). Forfeiture aside, respondent argues in her reply brief that Campbell included no residuary language in section 4.01. As discussed above, the absence of such language is not dispositive, because Campbell's intent to create a life estate is clear, and it is equally clear that respondent's power to direct the sale of the residence does not enlarge her life estate to a fee simple. Further, in section

4.02, the family trust provides that the remainder will be distributed to petitioner "free of trust." Had Campbell intended respondent to take the residence "free of trust," he would have said so. Accordingly, we hold that respondent has a life estate in the residence and no ownership interest in either the proceeds of any sale or a replacement residence purchased with those proceeds.

¶ 27                                   III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 29    Affirmed.