CARL GASTON, Indiv. and as Ex'r of the Estate of Margaret Gaston, Deceased, *et al.*, Plaintiffs-Appellants, *v.* ARCHIE HAMILTON *et al.*, Defendants-Appellees.

Fifth District   No. 81—181

Opinion filed August 13, 1982.

Lackey, Warner & Sauer, of Centralia, for appellants.

Robert M. Crain, of Crain, Hall & Cooksey, Ltd., of Centralia, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiffs, Carl Gaston, Mary Jane McCord, and Dale Gaston, appeal from a final judgment of the circuit court of Jackson County which denied all relief sought against the defendants, Archie Hamilton, Jr. (Archie), and Eula Hamilton (Eula). Although the plaintiffs raise several issues on this appeal, we need discuss only two of the plaintiffs' assertions of error as necessary for our decision. The plaintiffs contend first that a life tenant with a power of sale may not defeat the interests of the remaindermen either directly or indirectly. Second, the plaintiffs maintain that a fiduciary relationship exists as a matter of law between a life tenant and the remaindermen. For the reasons which follow, we affirm the judgment of the circuit court.

In 1951 Archibald C. Hamilton, Sr., Eula's husband, died testate. His will devised all of his real estate to Eula "to have and to hold *** for and during the term of her natural life." The will further provided that:

"I authorize and empower my wife, Eula Hamilton, to sell at public or private sale any part or all of the real estate owned

by me at the time of my death devised to her for life, and to execute a good and sufficient deed, conveying said real estate to the purchaser thereof, in which instance she shall have a life estate in the proceeds realized from the sale of my real estate and I further expressly provide that my wife be, and she is hereby empowered to use any part of the proceeds of the property bequeathed to her for life, either real or personal, for her own support, and she shall not be accountable to any person for the amount so used by her.

After the death of my wife, I give, bequeath and devise all real estate owned by me, provided it has not been sold by my wife, to my two children; ARCHIE C. HAMILTON, JR. and MARGARET GASTON, share and share alike, and if such real estate has been sold by her at the death of my wife, I give, bequeath and devise one-half of the proceeds realized from said sale to my children, ARCHIE C. HAMILTON, JR. and MARGARET GASTON, share and share alike."

Margaret Gaston died in 1975, and her interest in the property passed by the terms of her will to the plaintiffs in this case.

In 1942 Archie began farming the property, and from 1951 until 1975 did so under an oral year-to-year tenancy agreement with Eula. Since 1944 Archie's farm tenancy was Eula's sole source of support. On February 28, 1975, Eula executed a five-year lease of the land to Archie. In May of 1975, a representative of the Ziegler Coal Company contacted Eula and Archie for the purpose of acquiring the land for a coal dock facility. A written lease was prepared by the coal company, but the plaintiffs refused to sign it because it failed to recite the consideration which Archie was to receive in exchange for his leasehold. Eula thereafter exercised her power of sale and transferred the land to the coal company for $478,420 payable over 40 years at six percent interest. Archie entered into a separate agreement by which he quitclaimed his interest to the coal company. Although a revenue declaration recited the consideration for this transaction to be $5,000, Archie received from the coal company a check for $320,000 and a lease-back agreement, among other things.

The plaintiffs thereafter instituted this suit. Count I of the complaint alleged that the defendants in concert had arranged and structured the sale of the real property so as to divert $320,000 to Archie and thereby wrongfully exclude the plaintiffs from enjoyment of their remainder interests in breach of a fiduciary duty by the life tenant. Count I also prayed for various forms of equitable relief. Count II sought equitable relief for Archie's alleged exercise of undue influence

over Eula in breach of his fiduciary duties. After a bench trial, the circuit court found that Archie had not exerted undue influence or pressure on Eula, that the plaintiffs had failed to show any concerted action by the defendants to divert remuneration from the plaintiffs, and that the plaintiffs had failed to prove the existence of a fiduciary relationship between the defendants.

■■■ On this appeal the plaintiffs first contend that a life tenant may not defeat the interests of the remaindermen, either directly or indirectly. While this may be a sound formulation of Illinois law as an abstract principle (see, *e.g., Cales v. Dressler* (1924), 315 Ill. 142, 148, 146 N.E. 162; *Galford v. Eastman* (1909), 242 Ill. 41, 47, 89 N.E. 783), we find the rule inapplicable to the controversy presented for decision. In the case *sub judice*, the will bequeaths the testator's real estate to Eula "to have and to hold *** for and during the term of her natural life." The parties agree, and we hold, that the language created a life estate in favor of Eula in the property. (See generally *Griffin v. Griffin* (1963), 29 Ill. 2d 354, 194 N.E.2d 641.) The will also empowered Eula to sell the property and, in the event that she exercised the power of sale, expressly provided that she was to have a life estate in the proceeds thereof and that the children would have remainder interests therein. The gravamen of the plaintiffs' complaint appears to be, in the words of the trial court, that "they did not want to receive their part of the proceeds after the death of Eula Hamilton in installment payments paid out over 40 years ***." To avoid this result, the plaintiffs have characterized their interests as vested remainders and described the payment to Archie as a diversion. We find these labels inaccurate because they fail to reflect the effect of the power of sale on their interests and the value, *to the coal company,* of Archie's leasehold.

> "Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of or into the gift to the remainderman then the remainder is contingent, but if, after words giving a vested interest, a clause is added making it subject to being divested, the remainder is vested. Thus, on a devise to A for life, the remainder to his children, but if any child dies in the lifetime of A his share to go to those who survive, the share of each child is vested, subject to be divested by its death, but on a devise to A for life, remainder to such of his children as survive him, the remainder is contingent." (*Kost v. Foster* (1950), 406 Ill. 565, 569, 94 N.E.2d 302.)

The testator's will declared that "[a]fter the death of my wife, I give,

bequeath and devise all real estate owned by me, provided it has not been sold by my wife, to my two children ***." Under *Kost*, the words "after the death of my wife" give a vested remainder interest because death is certain to occur eventually. However, the words "provided it has not been sold by my wife" subject the vested remainder to divestment on the exercise of the power of sale. We conclude that the plaintiffs' interests *in the real estate* are vested remainders subject to defeasance on the exercise on the power of sale. (See Restatement of Property sec. 157, Comment on Clause (c), at 554 (1936).) When Eula did exercise the power of sale, the plaintiffs' vested remainders *in the real estate* were defeated (*Estate of Tognotti* (1970), 128 Ill. App. 2d 120, 124, 212 N.E.2d 803), and in their stead, plaintiffs acquired remainder interests in the proceeds, under the terms of the will. We find nothing improper in Eula's exercise of the power of sale, even though it defeated plaintiffs' interest in the specified property, because this action was not only anticipated by the testator but authorized by him in the will by the specific power of sale given to Eula and the alternative gift to the children of a remainder in the proceeds of sale.

Plaintiffs also contend that because Archie received $320,000, they should share in that payment. This argument assumes that the payment was for Archie's remainder interest and that it was somehow disguised as compensation for Archie's leasehold. The evidence established that the opposite was so. As the trial court noted, the value of the leasehold to the coal company for the purpose of building a coal loading dock far exceeded the value of the leasehold were the land confined to use for exclusively agricultural purposes. There was no evidence that the lease was executed in order to circumvent the plaintiffs' rights; in fact, the lease was executed before any negotiations were begun with the coal company. Whether the payment to Archie was intended to compensate him for his remainder or his leasehold was a question of fact and "a court of review will not reverse a judgment unless the findings are clearly and palpably against the manifest weight of the evidence." (*Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 122, 426 N.E.2d 604.) The trial court's findings were amply supported by the evidence and therefore we will not disturb the judgment on this basis.

Plaintiffs next contend that a fiduciary relationship exists as a matter of law between a life tenant and the remaindermen. A life tenant owes a duty to the remaindermen to prevent waste (*Guhl v. Guhl* (1941), 376 Ill. 100, 111, 33 N.E.2d 185), not to manipulate the title so as to defeat the remaindermen (*Cales v. Dressler* (1924), 315

Ill. 142, 148), and not to transfer the property for an inadequate consideration (*De Groot v. Kohr* (1971), 2 Ill. App. 3d 924, 927). The trial court found that the defendants had not acted in concert to structure the sale so as to defeat the remaindermen and that the plaintiffs had failed to prove that the consideration was inadequate or somehow "diverted" to Archie. There was no evidence at all of waste. These findings are amply supported by the evidence and will not be disturbed on appeal. (*Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 122.) This obviates an extended discussion of plaintiffs' last point, which was that the defendants had the burden of proving that their conduct was fair and proper. We find that the defendants proved by clear and convincing evidence that their conduct in the questioned transaction was fair and proper. We note here that the plaintiffs have not appealed from the trial court's finding that Archie had not breached any fiduciary relationship nor overreached or exerted undue influence on Eula at the plaintiffs' expense.

Because no error has been shown in the proceedings in the circuit court of Jackson County, we affirm the judgment of that court.

Affirmed.

KARNS, P. J., and WELCH, J., concur.