LaVERNE ANN THOMAS et al., Plaintiffs-Appellants, v. THE FIRST NATIONAL BANK OF CHICAGO, Defendant-Appellee (A. LaVerne Thomas, Defendant-Appellee and Cross-Appellant).

First District (4th Division)   No. 83—2708

Opinion filed May 30, 1985.—Rehearing denied July 15, 1985.

Winston & Strawn, of Chicago (Calvin Sawyier, of counsel), for appellants.

Sidley & Austin, of Chicago (James J. Carroll and Edna Selan Epstein, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs Edwin C. Thomas III (Edwin) and Robert C. Thomas (Robert), individually and as co-executors of the estate of Edwin C. Thomas (Mr. Thomas), deceased, and LaVerne Ann Thomas (LaVerne) (hereinafter collectively the Thomas children) filed a two-count complaint against their mother, A. LaVerne Thomas (Mrs. Thomas), and First National Bank of Chicago (FNB) in the Cook County circuit court. Plaintiffs sought a declaratory judgment of the family members' interests in the property of Mr. and Mrs. Thomas pursuant to the terms of a joint and mutual will which Mr. and Mrs. Thomas had executed. The lawsuit further requested an accounting of Mrs. Thomas' use of the property both in the past and in the future.

Mrs. Thomas answered the complaint and counterclaimed against Robert for money owed on a promissory note on which she alleged Robert's payments were in default. FNB filed a motion to be dismissed as a party defendant, which the trial court granted. Thereafter Mrs. Thomas motioned the court for summary judgment in her favor. The Thomas children disputed her entitlement to such judgment; they did not, however, file a countermotion for summary judgment on their own behalf. The trial court granted Mrs. Thomas' motion on both the children's complaint and her counterclaim against Robert.

With regard to the joint and mutual will and the interests of the family members thereunder, the trial court held, *inter alia,* that Mrs.Thomas had full power to sell, convey, invest, and reinvest all

property. Although the trial court further found that Mrs. Thomas had no present duty to account, she was nevertheless ordered to furnish to the Thomas children an annual report of investments which she had placed in a self-declaration of trust with FNB.

The Thomas children now appeal from the trial court's judgments; Mrs. Thomas cross-appeals. They raise the following questions for our review:

1. Whether Mrs. Thomas' interest in the property, in view of the joint and mutual will, was limited to a life estate interest with no power of sale of the property involved;

2. Whether Mrs. Thomas had a present duty to account to the Thomas children on her management or disposition of the property, and if so, to what extent she was obligated to do so;

3. Whether the FNB was properly dismissed as a party defendant to the cause;

4. Whether Robert's statements in his verified answer that the promissory note he executed to his mother was conditionally delivered to her, and that the condition had not yet occurred so that the debt had not yet become due, was sufficient to present a genuine issue of material fact in consequence of which the summary judgment was erroneously entered in favor of Mrs. Thomas on her counterclaim.

We find that:

1. The Thomas children waived any argument on appeal that Mrs. Thomas' life estate interest did not include the power of sale of the property because they agreed before the trial court that the scope of Mrs. Thomas' interest and power of disposition over the property in question was governed by *Moline National Bank v. Flemming* (1980), 91 Ill. App. 3d 398, 414 N.E.2d 936, which applies where a life estate tenant is given power of sale.

2. Mrs. Thomas had no present duty to account to her children on her management or disposition of any of the estate property, since the affidavits presented by the parties raised no genuine issue of material fact and further showed no fraud or malfeasance of the power granted to Mrs. Thomas under the will;

3. The trial court properly dismissed FNB as a party defendant, since Mrs. Thomas had no present duty to account;

4. Robert's statements in his verified answer presented no genuine issue of material fact to show conditional delivery of the note, as an oral statement regarding such delivery is inad-

missible under the parol evidence rule.

Accordingly, we affirm that portion of the trial court's order setting forth Mrs. Thomas' interest in and power over the property; we reverse that portion of the order which obligated her to account to her children for the investments held in a self-declaration of trust with FNB; we affirm without discussion the trial court's order which granted FNB's motion to dismiss; and we affirm the portion of the trial court's order which granted Mrs. Thomas' motion for summary judgment upon her counterclaim against Robert.

BACKGROUND

The record establishes the following background information which stands undisputed between the parties.[1] Mr. and Mrs. Thomas were married in 1935. Three children were born of the marriage, each of whom is a plaintiff in this cause. In 1982 when this action was commenced, Edwin was 41 years old; Robert was 40; and LaVerne Ann was 38. Mrs. Thomas was 63 years old.

Mrs. Thomas and her husband executed their "Last Will and Testament" on March 14, 1964. The text of this document specifically referred to the will as being "joint and mutual." Mr. and Mrs. Thomas subsequently executed a codicil to this will on July 8, 1973, by which Edwin and Robert were named co-executors of the estate and were granted certain powers not pertinent here. The codicil otherwise republished the 1964 will.

The will provided in relevant part:

"First: In consideration of our love and affection for each other and of a mutual understanding between us that all prop-

---

[1]We wish to observe that the record indicates the presence of considerable animosity between Mrs. Thomas and her children. In fact, the parties' pleadings, affidavits, and argument before both the trial court and this court upon review have detailed instances of various forms of alleged personal misconduct by one party against the other and have in addition stated inferences of the parties' personal natures based upon these allegations. With all due respect to the parties involved as well as their able counsel in this cause, we must nevertheless recognize that the temptation to degenerate legal argument into distasteful and needless name-calling has not been fully withstood by either opponent on all occasions. We see no reason to set forth in detail in this opinion the substance of the parties' arguments in this regard and emphasize that our decision does not in any manner rest upon agreement with any personal characterization which one party may have attempted to place upon the other in the context of their contentions upon any particular issue. We choose instead simply to state at this juncture our recognition of some of the family members' apparent disfavor and discord, and will make no further substantive reference or comment thereto in the remainder of this opinion.

erty belonging to us jointly or to either of us is to pass to the survivor of us and upon the death of such survivor all such property is to pass pursuant to the provisions hereof, we make this our joint and mutual Will. We do hereby mutually agree that during the remainder of our joint lifetimes neither of us may alter or revoke this our last Will without the consent of the other and, upon the death of the first of us to die, the survivor may in no event alter or revoke this our Will.

Second: On the death of each of us our Executor shall pay out of the principal of the estate of the one of us so dying all debts, funeral expenses, and costs of administration. Our Executor shall also pay out of the principal of such estate all estate, inheritance, transfer, and succession taxes, including any interest and penalties thereon, which may be assessed in any way by reason of such death, without seeking reimbursement from or charging any person for any part of such taxes so paid.

Third: Upon the death of the first of us to die each of us gives and bequeaths all the residue of our respective estates and property, real and personal, wherever situated, to the survivor of us; provided, however, that said survivor survives for thirty days. And if no survivor as herein provided, then our separate estates shall go to our children as provided in paragraph Fourth.

Fourth: Upon the death of the survivor of us, each of us gives and bequeaths all the residue of our respective estates and property, real and personal, wherever situated, as follows:

In equal shares to our children, Edwin C. Thomas III, Robert C. Thomas and LaVerne Ann Thomas, and to the heirs of their bodies begotten, and in the case of the death of either of them at any time leaving no heirs of their bodies begotten, then to the survivor or survivors of them. Any cnild or children of a deceased child of ours shall take such share only as their parent would have taken if living.''

Mr. Thomas died on July 30, 1979, and the will was admitted to probate. No argument is raised by any party regarding the propriety of the probate action, which was still pending at the time this cause commenced.

The Thomas children filed their two-count complaint for declaratory judgment and relief ancillary thereto against FNB and Mrs. Thomas on January 4, 1982. Both counts of the complaint sought identical relief:

(1) a declaratory judgment stating that Mrs. Thomas "has

only a life estate in the property [of herself and Mr. Thomas by virtue of the will] and is subject to the duties of a life tenant to account for the property and not to waste, mismanage or dissipate the property";

(2) as ancillary to the declaratory judgment and in aid thereof, an order to the effect that:

(a) "any transfer by either [Mrs. Thomas or FNB] of any part of the property is unlawful if it affects adversely the interests of those persons whom [Mr. Thomas] provided should have the property after the death of [Mrs. Thomas]";

(b) "[Mrs. Thomas and FNB] account to [the Thomas children], both for the past and in the future, for the property, the income therefrom and the need, if any, to sell or exchange any of the property in order to provide [Mrs. Thomas] with appropriate support and maintenance and that any improper loss or dissipation of the property be made up from the income therefrom"; and

(c) any other and further relief as may be just, including attorneys' fees and expenses of suit.

In count I of the complaint, the children requested such relief based upon their alleged interests as vested remaindermen. In count II, they relied upon their alleged status as third-party beneficiaries to the contract contained in the joint and mutual will.

Both counts of the complaint made identical allegations. First, it was stated that because the will expressly applied "to all property belonging to us jointly or to either of us," its effect was to have created, upon Mr. Thomas' death, a life estate interest in Mrs. Thomas in all property, both real and personal, which Mrs. Thomas held either in her own right, as surviving joint tenant with Mr. Thomas, or as beneficiary under the will. The pleading alleged that FNB at all times relevant had full knowledge of the joint and mutual will and that Mrs. Thomas' interest in the property was limited to a life estate.

The complaint stated that after Mr. Thomas' death, Mrs. Thomas "recognized and acknowledged that she had only the aforesaid limited interest in the property." It then went on to allege that the children had "continuously sought to arrange with [Mrs. Thomas] procedures for regularizing the information [they] receive about the identity and condition of the property and about any changes in its nature or composition, but that all such efforts have been to no avail and she has failed to give [them] any information about that very substantial part of the property which is in her possession and control."

The complaint further specified that Mrs. Thomas had "made

statements inconsistent with her ownership of only the aforesaid limited interest in the property, has exercised dominion and control over the property as if she were the owner in fee, and has repudiated the contract contained in the joint and mutual Will ***." They alleged that these acts were:

"(a) She has placed part of the property with defendant [FNB] in a manner which is improper and unlawful for the holder of only a life estate in such property.

(b) She has stated that she revoked said joint and mutual Will during Edwin C. Thomas' lifetime with his knowledge.

(c) She has made gifts of substantial items of the property and has stated she intends to make more such donations.

(d) She has taken steps to offer for sale at an unreasonably low price real estate which is the sole asset of a·corporation whose controlling shares are part of the property."

Based on the foregoing, the pleading stated that the Thomas children had no adequate remedy at law for damages for Mrs. Thomas' alleged wrongful dealings.

FNB filed its motion to be dismissed as party defendant on January 4, 1982. The motion relied upon sections 26, 45, and 48 of the Civil Practice Act (now sections 2—407, 2—615, and 2—619 of the Code of Civil Procedure). (Ill. Rev. Stat. 1981, ch. 110, pars. 2—407, 2—615, 2—619.) The motion claimed that the Thomas children's pleading failed to state a cause of action against it in that the allegation in the complaint that Mrs. Thomas had placed part of the property with FNB in a manner which was improper and unlawful for the holder of a life estate was insufficient, vague, and conclusory. The motion to dismiss further claimed that FNB had "no personal stake in this intrafamily dispute" and therefore was not properly joined as a party. The motion stated that FNB, as custodian for Mrs. Thomas, had accepted certain of her securities in an investment management account; in this capacity, FNB's duties were to collect and remit income, to make investment recommendations, and to act solely on the direction of its principal. FNB therefore contended that it was not a necessary party and requested that it be dismissed as a party defendant. In support of the motion, FNB presented the affidavit of one of its officers, who stated that the facts stated in the motion were true. FNB filed its memorandum in support of the motion on February 22, 1982.

The Thomas children responded to the bank's motion with a memorandum in opposition in which they stated that they would "be able to allege the details of the Bank's improper arrangement only after [they were] able to obtain information as to such details."

Based on the parties' pleadings and arguments, the trial court granted FNB's motion to dismiss on July 23, 1982. In its oral pronouncement, the court reasoned that "in an accounting action, *** the complaint must allege facts showing a right to an accounting; that is, it must show that the Plaintiff has no adequate remedy and must allege some substantial or chancery grounds of jurisdiction, such as fraud, the need of discovery, the mutuality or the complexity of an accounting or the existence of a fiduciary relationship. And there is nothing in this complaint that there is a fiduciary relationship that the Bank owed these Plaintiffs." The court therefore granted the bank's motion on these grounds. The Thomas children did not attempt to file an amended complaint. Instead, they now seek reversal of the trial court's order in this appeal.

During the pendency of the bank's motion to dismiss, Mrs. Thomas filed a motion to dismiss the complaint which the trial court subsequently denied. Mrs. Thomas then filed her answer to the complaint and a counterclaim against Robert on August 19, 1982. The pertinent part of the answer was in substance a denial that she owned only a life estate interest in the property, denial that she had wrongfully managed any of the property, and denial that she was obligated to give the children any form of an accounting.

In her counterclaim against Robert, Mrs. Thomas alleged that on or about November 13, 1979, she lent the principal sum of $80,000 to him and that he had executed and delivered to her a promissory note evidencing the terms of this loan, a copy of which was attached to the claim. Under the terms of the note, interest on the loan was set at 6% per annum; interest payments of $1,200 were required on February 13, 1980, May 13, 1980, August 13, 1980, and November 13, 1980. The entire principal balance was due on or before November 13, 1980. Mrs. Thomas alleged that Robert had defaulted on the loan by failing to make the required interest and principal payments, despite oral demands for such payment by Mrs. Thomas and written demand for payment by an attorney representing Mrs. Thomas in a letter from that attorney to Robert dated April 8, 1981, a copy of which was also attached to the pleading. Based on these allegations, Mrs. Thomas requested judgment against Robert for the principal balance due and interest thereon as well as payment of all costs incurred to collect the loan, including court costs and reasonable attorney fees.

Robert's answer to the counterclaim denied that Mrs. Thomas or any other individual had made any demand for payment and alleged that the note "was delivered on condition that [Robert] first sell his house in Downers Grove and that said condition has not occurred, de-

spite the best efforts of [Robert] to sell said property."

Mrs. Thomas filed her motion for summary judgments upon counts I and II of the complaint and her counterclaim on November 22, 1982. The motion was accompanied by memoranda in support, Mrs. Thomas' affidavit, and 13 documentary exhibits. The Thomas children filed their motion in opposition to the summary motion on March 4, 1983. Both Edwin and Robert filed affidavits of importance to a resolution of the issues raised in this appeal. Various documentary exhibits were also presented by them, as well as a memorandum in support of their claims.

None of the parties has provided a complete listing of the specific items of real and personal property at issue, and we will not attempt to make a compilation of the assets on our own initiative. Instead we recognize, based upon the documents and affidavits presented, that the property included parcels of land, condominium units, numerous shares of stock, certificates of deposit, checking and savings accounts, pension plan payments, and various items of personal property (automobiles, furniture, china, jewelry, etc.). We estimate informally, simply for the sake of comprehension of the nature of this action, that the value of the combined assets of Mr. and Mrs. Thomas was somewhere in the general neighborhood of over $2 million.

Mrs. Thomas' motion for summary judgments argued in substance that the children were not entitled to a declaratory judgment nor an accounting from her and that the will gave her full power to sell, transfer, assign, convey or gift all the property in question, so long as she did not waste, mismanage, or dissipate the property or do anything with any part thereof that was contrary to the intent of the will.[2]

In the relevant parts of her affidavit in support of summary judgment, Mrs. Thomas detailed what she had done thus far with some of the property which she either held solely or in joint tenancy with Mr. Thomas or which she took under the will. These statements regarding dispositions, as well as responses thereto contained in the affidavits of Robert or Edwin, were as follows:

---

[2]Mrs. Thomas also took the position that she had previously revoked the joint will in August 1977, prior to Mr. Thomas' death. She submitted, however, that even assuming, *arguendo*, the validity and enforceability of the joint and mutual will as to her, the Thomas children were nevertheless not entitled to the relief they sought. She chose therefore not to argue the question of her revocation of the will, but reserved her right to preserve that issue in the event there was a trial on the merits of the Thomas children's complaint. Accordingly, we do not refer to or address this issue, nor do we consider any of the references to possible revocation made by either party.

1. Mrs. Thomas stated that after her husband's death, she gave each child various items of personal property. LaVerne was given a radio and a watch. Edwin was given a large dining room set, a television set, and an electric fan. Robert was given jewelry, china, appliances, tools, paintings, a substantial amount of furniture, and his choice of his father's clothing. She further stated that the children also accepted other personal property from her, but did not specify what. Edwin's affidavit stated in response that the dining room set was given to his wife, that he was not consulted in connection with this gift, and that he did request one of his father's watches and his ring, which he did not receive. Robert made no reference to these dispositions in his affidavit.

2. Mrs. Thomas stated that she donated to charity a 1975 Sterling Super Sport Fiberglass boat, valued at $5,000, because of its excessive storage costs. She stated that she offered to give the boat to Edwin and Robert but that they refused.

Edwin responded that he had refused Mrs. Thomas' offer to purchase a one-half interest in the boat along with his brother, apparently because it had meant so much to his father. He stated that he also urged his mother not to sell the boat to anyone else for the same reason. Robert made no response in his affidavit.

3. Mrs. Thomas stated that Industrial Corporation (Industrial) (a closely held corporation in which Mrs. Thomas held a controlling share of stock in joint tenancy with her husband prior to his death and in which the Thomas children were also shareholders) sold a duplex in Florida belonging to the corporation in August 1980 for $115,000 and that a portion of the proceeds was used to pay off an intercorporate loan in the amount of $89,000 which Industrial owed to RAD (another closely held corporation, in which Mrs. Thomas also held a controlling share of stock in her own name prior to Mr. Thomas' death). She stated that this was done upon the advice of a certified public accountant who had been retained by Industrial following Mr. Thomas' death.

Edwin made no direct response to this statement. Instead he claimed only that Industrial's "assets have been sold off *** [and] [t]he proceeds from the sale of said assets were surreptitiously removed from [Industrial] by [Mrs. Thomas] without any notice to the shareholders." Robert also made this last statement in his affidavit. He further stated that Mrs. Thomas

never informed him of her intention to transfer the assets of Industrial to RAD to satisfy the "purported loan balances." He stated that he did not believe that Industrial owed money to RAD and that when he "learned of the surreptitious transfer [he] objected strenuously to [Mrs. Thomas]. She stated that her accountant told her to do it."

4. Mrs. Thomas stated that certain property of Industrial had been offered for sale because the land was not income-producing and dissipated corporate assets. She detailed the procedure by which approval for such sale was obtained by the corporate board of directors, the value of the property ascertained ($31,500 appraisal), and the sale price for which listing of the property had been contracted ($109,000 list price). She stated that there had been no inquiries from any prospective purchaser to obtain the property at any price.

Edwin and Robert responded that the land had a value far in excess of $30,000, that it had been purchased by Industrial from Mr. Thomas at far more than $30,000, and that they objected to the sale of the property at such a low price.[3]

5. Mrs. Thomas stated that she placed certain shares of stock and other securities in trust with FNB on March 30, 1981, and appointed the bank as custodian to collect and disburse income and to render periodic investment advice. The trust agreement specifically took into consideration the joint and mutual will, in that it provided:

"Article 2

On March 14, 1964, my late husband, EDWIN C. THOMAS, and I executed a joint and mutual will by which we each agreed that, upon the death of the survivor of us, such survivor would bequeath and devise the residue of his or her estate as follows:

---

[3]Among the documents presented by Mrs. Thomas as attachments to her answer there was included a transcript of a meeting of Industrial's board of directors on October 16, 1981. The transcript indicates that Edwin attended the meeting and expressed his concern over: (1) the tax consequences of sale of the property at $30,000 when it had been previously sold by Mr. Thomas to Industrial for $125,000; (2) the possibility that Mrs. Thomas intended to sell the property in order to liquidate the corporation; and (3) the expense of Mrs. Thomas' retainment of outside counsel to act as corporate counsel at the meeting. According to statements in Mrs. Thomas' affidavit which were not contradicted by the counteraffidavits of Edwin and Robert, both Edwin and Robert had been retained as corporate counsel for Industrial, and paid a retainer for these services, prior to Mr. Thomas' death.

'In equal shares to our children, Edwin C. Thomas III, Robert C. Thomas and LaVerne Ann Thomas, and to the heirs of their bodies begotten, and in the case of the death of either of them at any time leaving no heirs of their bodies begotten, then to the survivor or survivors of them. Any child or children of a deceased child of ours shall take such share only as their parent would have taken if living.'

On July 8, 1973, we executed a Codicil to said Will by which we appointed our sons, Robert C. Thomas and Edwin C. Thomas III as Co-Executors. In compliance with the provisions of said Will and Codicil, I direct the Trustee, upon my death, to distribute all of the trust assets to the Executors of my Will."

The affidavits of Edwin and Robert made no response nor any attempt to dispute Mrs. Thomas' statements regarding the trust arrangement.

6. Mrs. Thomas stated that her children have recognized her power to buy and sell assets and to invest and reinvest them, in that:

(a) they made no objection to her sale of her home in Lemont, Illinois, in the closing of which Robert participated and for which he was reimbursed $2,000 in legal fees, and

(b) they gave her advice on the sale and purchase of certain stock and other investments.

Edwin responded in his affidavit that he and Mrs. Thomas, after consultation with a stock broker, "jointly decided to implement the stock broker's suggestions ***." Robert made no attempt in his affidavit to dispute or otherwise contradict Mrs. Thomas' statements.

The Thomas children claimed before the trial court that they were entitled to a declaratory judgment which recognized their interests in all of the property as vested remaindermen. They also contended that they did not seek an accounting *per se*, but instead wished to receive sufficient information from Mrs. Thomas regarding her use and disposition of the property so that they could ensure the propriety of her conduct and so that they could make adequate estate planning of their own interests. They made no motion for summary judgment in their favor.

Based upon the parties' pleadings, affidavits, documents and written and oral arguments regarding the Thomas children's complaint, the trial court found that the record "discloses no wrongdoing" by

Mrs. Thomas and that she had "no present duty to account to [the Thomas children] with respect to the property in controversy." The court further found that Mrs. Thomas had "the power to use the income and to consume the principal of the property in controversy and power to sell, invest, and reinvest and otherwise deal with the property restricted only to the extent that she may not give a considerable portion of it away or do anything with it that would be inconsistent with the intent of the joint and mutual will executed by her on March 14, 1964, republished by codicil on July 8, 1973."

Based on these findings, the court declared first that after the end of each calendar year, Mrs. Thomas was to furnish or cause to be furnished to the Thomas children a statement of her assets in the hands of FNB as of the end of such year. The court further directed that in the event Mrs. Thomas transferred her securities from FNB to any other investment advisor, she shall, after the end of each calendar year, furnish or cause to be furnished to the children a statement of her assets in the hands of such new investment advisor as of the end of such year. The court declared, however, that it "impose[d] no restriction on [Mrs. Thomas'] use of the property or the income therefrom." Lastly, the court declared that the Thomas children or their attorney or agent had "no present right to interfere with [Mrs. Thomas'] power, individually and as Trustee of [her trust at FNB], to sell, invest, reinvest, and otherwise deal with the property, including, without limitation, filing any document with any recorder of deeds or registrar of title asserting that the interest of [Mrs. Thomas], or any corporation controlled by her in any real estate is limited or restricted in any way or asserting to any prospective purchaser, transfer agent, title insurance company, successor trustee of [Mrs. Thomas' trust], or other third party that the interest of [Mrs. Thomas], in any property, real or personal, is limited or restricted in any way other than as otherwise declared herein."

With regard to Mrs. Thomas' counterclaim, the court found that Robert was indebted to Mrs. Thomas by virtue of an $80,000 loan she made to him with an interest rate of 6% per annum, evidenced by his promissory note dated November 13, 1979, and that he had defaulted on his obligation to repay the loan, which had a present unpaid principal balance of $70,900 and a present unpaid interest balance of $14,436. The court ordered Robert to repay to Mrs. Thomas both the principal and interest balances due within 30 days. The trial court reserved jurisdiction to enforce the declaration of rights it had made.

The Thomas children now appeal from both the trial court's final declaratory judgment order and its prior order, which granted the mo-

tion to dismiss of FNB. Their notice of appeal requests reversals of these orders and the entry of a judgment declaring their vested interest in the property held by Mrs. Thomas and their right to an accounting in respect to said property from Mrs. Thomas and FNB.

In her notice of cross-appeal, Mrs. Thomas appeals from those portions of the trial court's final declaratory judgment "imposing a duty on her to deliver annual statements of her property to her children ***, suggesting or implying that she may, in the future, have a duty to account to her children and otherwise limiting or restricting her use of her property." She also cross-appeals from the trial court's order which denied her motion to strike and dismiss the complaint.

The notice of cross-appeal requests affirmance of the trial court's summary judgment order with instructions to modify the decree by (1) deleting any provisions which require her to deliver annual statements or otherwise account to her children; (2) deleting any provisions which restrict or limit her use of the property during her lifetime; (3) ordering her children to cease and desist making threats to or demands of her; and (4) taxing all costs to the children. The notice further asks in the alternative that the trial court's order which denied Mrs. Thomas' motion to strike and dismiss the complaint be reversed; it requests in the second alternative that this court remand the cause for trial upon various specified issues regarding the validity and enforceability of the joint and mutual will as to Mrs. Thomas. Finally, the notice seeks affirmance of the trial court's order which granted her motion for summary judgment upon her counterclaim.[4]

OPINION

I

The first issue presented for our consideration is whether the trial court's order was erroneous in its statements of Mrs. Thomas' interests in the property.[5]

---

[4]The notice also requests that the cause be remanded to the trial court with instructions to order Robert to pay all of Mrs. Thomas' costs of collecting the debt owed, including court costs and reasonable attorney fees, in accordance with the provisions of the promissory note Robert executed. This request was withdrawn in Mrs. Thomas' appellate brief before this court, and will not be considered here.

[5]There is no argument to dispute that the will of Mr. and Mrs. Thomas was a joint and mutual will and that the Thomas children held a vested remainder interest in the property upon the death of Mr. Thomas. (See *Rauch v. Rauch* (1983), 112 Ill. App. 3d 198, 445 N.E.2d 77.) There is also no claim that the will did not affect Mrs. Thomas' interest in property she held with Mr. Thomas in joint tenancy and tenancy in common. See *Helms v. Darmstatter* (1966), 34 Ill. 2d 295, 215 N.E.2d 245.

The Thomas children contend that the court's order was in error because it was "vague and indefinite" in that it stated only that Mrs. Thomas' interest was "limited or restricted *** as declared herein," which was that she had "the power to use the income and to consume the principal of the property in controversy and power to sell, invest, and reinvest and otherwise deal with the property restricted only to the extent that she may not give a considerable portion of it away or do anything with it that would be inconsistent with the intent of the joint and mutual will." They argue that under the terms of the will Mrs. Thomas' interest was a life estate; since the will did not expressly grant her the power to sell or otherwise dispose of the property, her life estate interest did not include such power of sale. They contend that this lack of power to convey extended not only to real property but to personal property (such as the stock) as well.

Mrs. Thomas argues that her life estate interest includes the power to dispose and therefore claims that in this regard the trial court's judgment should be affirmed.

■ As a general principle, "there has always been deeply rooted in property law a distinction between powers and ownership, between dispositions made through ownership and in the exercise of powers." (H. Carey & D. Schuyler, Illinois Law of Future Interests sec. 20, at 59 (1941).) Illinois courts have long recognized the validity of the grant of a life estate interest with power of sale. (*In re Estate of Cashman* (1890), 134 Ill. 88,. 24 N.E. 963; *Henderson v. Blackburn* (1882), 104 Ill. 227; *Fairman v. Beal* (1852), 14 Ill. 243.) For example, in *In re Estate of Fahnestock* (1943), 384 Ill. 26, 50 N.E.2d 733, the residuary clause of a will bequeathed property to a wife "to have and to hold as her own and do with as she sees fit" and thereafter gave "any portion thereof remaining unexpended by" the wife to the "legal heirs" of the testator. The Illinois Supreme Court held that the wife "took a life estate with power of expending as much, or all, of the estate as she may choose." 384 Ill. 26, 34, 50 N.E.2d 733.

Grants of a life estate tenancy with no power of sale have also been recognized in this State. For example, where terms of a will granted an individual a life estate in property and provided that thereafter "whatever remains" or "all that remains" was to pass to a third party, it was held that no power of sale was vested in the life estate tenant. (*Vanatta v. Carr* (1906), 223 Ill. 160, 79 N.E. 86.) The court has reasoned that this result is sound because words such as "then remaining" serve to dispose of the remainder interest in the property. (*Thompson v. Adams* (1903), 205 Ill. 552, 557, 69 N.E. 1.) A similar conclusion was reached in *Grubmeyer v. Mueller* (1944), 385 Ill. 529,

53 N.E.2d 438, where a testator gave his residuary estate to his wife, and "at her death" gave "whatever may be remaining" to the heirs of two named persons. The Illinois Supreme Court held that the wife took only a life estate with no power of sale. Also, where a will has granted "the residue" of an estate to an individual for the duration of his natural life, and thereafter granted "the residue" of the property to third parties, courts have held that the life estate tenant took the property with no power of sale. *Catlett v. DeRousse* (1923), 310 Ill. 343, 141 N.E. 753; *Buckingham v. Morrison* (1891), 136 Ill. 437, 27 N.E. 65; *Walker v. Sturgis* (1964), 47 Ill. App. 2d 251, 198 N.E.2d 131.

More recently, in *First United Presbyterian Church v. Christenson* (1976), 64 Ill. 2d 491, 356 N.E.2d 532, the Illinois Supreme Court reaffirmed the applicability of these rules to the interpretation of joint and mutual wills. The court specifically noted that "[i]n the absence of an express grant of such authority [of power of sale] in the will under which the life estate was created, a life tenant is without power to convey the [property] *** by sale, *inter vivos* gift or appointment. [Citation.]" 64 Ill. 2d 491, 499, 356 N.E.2d 532.

■ Where no power of sale is accorded to the life tenant, courts have traditionally set aside any attempted conveyance (*First United Presbyterian Church v. Christenson* (1976), 64 Ill. 2d 491, 356 N.E.2d 532; *Grubmeyer v. Mueller* (1944), 385 Ill. 529, 53 N.E.2d 438; *Estate of Tognotti* (1970), 128 Ill. App. 2d 120, 262 N.E.2d 803), or have imposed a constructive trust upon the proceeds of the sale for the benefit of the vested remaindermen. *Curry v. Cotton* (1934), 356 Ill. 538, 191 N.E. 307; *Keats v. Cates* (1968), 100 Ill. App. 2d 177, 241 N.E.2d 645; see also *Vanatta v. Carr* (1906), 223 Ill. 160, 79 N.E. 86.

On the other hand, where the power of sale is granted the life estate tenant, the courts have nevertheless recognized that this power may not be exercised capriciously nor may it be exercised in a manner which contradicts the terms of the conveyance. (*Cales v. Dressler* (1924), 315 Ill. 142, 146 N.E. 162; *Easley v. Little* (1924), 314 Ill. 553, 145 N.E. 625; *Gaston v. Hamilton* (1982), 108 Ill. App. 3d 1145, 440 N.E.2d 190; *De Groot v. Kohr* (1971), 2 Ill. App. 3d 924, 274 N.E.2d 127.) This rule was recently recognized in *Moline National Bank v. Flemming* (1980), 91 Ill. App.3d 398, 414 N.E.2d 936, in which the court held that a life estate tenant who was granted the power of sale acted beyond this authority when he placed the property in jointly held accounts or trust accounts for an individual other than the remaindermen named in the will. The court stated (91 Ill. App. 3d 398, 405, 414 N.E.2d 936):

"The power of the surviving spouse Albert over the property he obtained upon the death of Eva is described in 97 C.J.S. *Wills* sec. 1367(2), at 307-09 (1957), which states:

'Where an agreement as to mutual wills does not define the survivor's power over the property, but merely provides as to the disposition of the property at his death, the survivor may use not only the income, but reasonable portions of the principal, for his support and for ordinary expenditures, and he may change the form of the property by reinvestment and the like; but he may not give away any considerable portion of it or do anything else with it that would be inconsistent with the spirit or the obvious intent and purpose of the agreement.' "

We note that in *Moline National Bank* there was no dispute that the surviving spouse was granted a life estate interest with power to convey. Thus, we conclude that the quotation from Corpus Juris Secundum was considered relevant by the *Moline National Bank* court only insofar as it stated the scope of a life estate tenant's power of sale; we do not view the court's reliance upon the quotation as an indication that the power of sale can be inferred where none is expressly granted, as this is not, in our opinion, the law in Illinois.[6]

■ The trial court in the instant case held that Mrs. Thomas had the power to sell, invest, reinvest or otherwise dispose of the property, so long as she did not waste, mismanage or dissipate the estate or do anything with it that was inconsistent with the joint and mutual will. It is clear that the trial court relied upon *Moline National Bank* in its ruling and the transcript of the trial court's oral pronouncement reflects this reliance. *In fact, counsel for the Thomas children agreed before the trial court that Moline National Bank applied to the facts here.*

First, at oral argument upon Mrs. Thomas' earlier motion to strike and dismiss the complaint, counsel for the Thomas children and the court engaged in the following colloquy:

"THE COURT: What does she do, just starve to death there, or what?

[COUNSEL]: No, not at all, your Honor, of course not. All we are asking is not that—you know, there are cases in Illinois,

---

[6]Apparently the prevailing view in the majority of other jurisdictions is to the contrary, *i.e.*, that a life estate tenant's power to convey is inferred unless expressly denied in the grant of the life estate tenancy. See Annot., 85 A.L.R.3d 8 (1978); 79 Am. Jur. 2d *Wills* sec. 786, at 843 (1975); 97 C.J.S. *Wills* sec. 1367(2), at 309 (1957).

your Honor, that would require if we were to insist upon it, cases that would require that she put up a bond as security for all of the money and the liquid assets which she has.

We have also cited those cases in our response. We are not asking for that. We are asking that only the application of the standards which [counsel for Mrs. Thomas] read to you, which is a very liberal standard, more liberal than the Illinois cases would suggest. And the one that is quoted from the Corpus Juris Secundum, and that is:

'The survivor may use not only the income' *** obviously, '*** but reasonable portions of the principal for her support and ordinary expenditures, and she may change the form of the property by reinvestment of [*sic*] the like, but she may not give away any considerable portion of it ***.'

And we allege that she has done that and stated that she will continue to do that. It goes on:

'*** or do anything else with it that would be inconsistent with the spirit of the obvious intent and purpose of the agreement.' "

Later, at oral argument upon Mrs. Thomas' motion for summary judgment, counsel for the Thomas children made similar representations of their position:

"THE COURT: ***[I]n your complaint for your counterlcima [*sic*] you are suggesting that I direct that she file, she file in this courtroom every year an accounting of the estate. And,—

[COUNSEL]: That's not true.

THE COURT:—that would open up the door to,—Pardon? What are you asking?

[COUNSEL]: We are asking, simply that your Honor declare that our client have the rights of the remainderman after any, after a life tenant. That doesn't—the fact that there is a life tenant in the situation does not mean that there is an accounting due from the Court or things are filed every year.

There are life tenants, your Honor, hundreds and thousands of them in this state, in this Country; they are not required to account, as your Honor is mentioning and as [counsel for Mrs. Thomas] tries to claim that we are asking Mrs. Thomas do. We are simply asking for the minimum that we can obtain from her so that we can keep some kind of track of what this property is and how it, generally, how it is being generally handled. Because she is a lifetime tenant, your Honor, life tenant, your Honor. That's clear on the law, and as remaindermen we have

certain—

THE COURT: *But she is a life tenant with the power to invade the corpus to meet her own needs and you want me to—*

[COUNSEL]: *We are not denying that, your Honor."* (Emphasis added.)

In his closing comments before the trial court at this same hearing, counsel for the Thomas children again reaffirmed the nature of their claim and the applicable case law:

"[COUNSEL]: This is simply a matter of extending that in this case to some kind of protection of what is acknowledged to be the rights of my client, of her children. And we certainly are not trying to intrude upon her any more than is possible, and I think we can do—I have suggested this many times before, but the attorneys take a rather hard headed view of this; I think we can do this without having any contact at all between Mrs. Thomas.

If she doesn't wish to have contact we would, and her children, it—it can be done by simply sending us a copy of the agency account inventory each year. This is sent out to her, a copy to one of the, one of the children. And by having her counsels simply inform us if there are any large gifts or any large transfers. That's the standard, your Honor, which the defendants themselves have set up here. *And under the Moline National Bank case in which they, in which the Court states very definitely that the life tenant in this kind of situation has the use of the income and we accept that; has the use of reasonable portions of the principal for her support and ordinary expenditures, has the—and has a right to change the form of the property by re-investment, and to make gifts which are ordinarily made were both spouses were alive. But what the survivor can't do, what the life tenant cannot do is 'give away any considerable portion of the property,' or do anything else that would be inconsistent with the spirit and obviously intent and purpose of the agreement.* And we are only asking for an informal way of having it being, assuring ourselves that that standard is met. And I can assure that that's—that it's only an extremist that we would come to court in order to try to obtain that, that measure of relief which is not the strict accounting that [counsel for Mrs. Thomas] mentioned. And as your Honor knows, we won't be in here for an accounting as remaindermen after a life tenant because that's not an appropriate equitable proceeding." (Emphasis added.)

This position was also taken by the Thomas children in their memorandum in opposition to Mrs. Thomas' motion for summary judgment, in spite of the fact that in an earlier portion of the memorandum they argued that Mrs. Thomas possessed only a life estate interest with no power of sale:

> "*Plaintiffs do not seek an accounting, but only enough information to see that the over-all value of the property is not dissipated to such a considerable extent as to be inconsistent with the obvious intent of the joint and mutual will contract.*

In *Moline Nat'l Bank v. Flemming*, 91 Ill. App. 3d 398, 405 (3rd Dist., 1980), a rule is quoted from *Corpus Juris Secundum* as to use by the survivor of the property in which he or she has a life estate by virtue of the joint and mutual will contract. In connection, for example, with the power to make gifts of the property, other Illinois cases state a more restrictive rule. *E.g., Lehnard v. Specht*, 251 Ill. 603 (1911). Nevertheless, plaintiffs here are willing to accept the rule quoted in the *Moline Nat'l Bank* case—which is also espoused by defendant. (Def's Memo., pp. 29-30.) That rule permits the survivor, as life tenant of the property, to:

> (1) use the income;
> (2) use reasonable portions of the principal for support and ordinary expenditures;
> (3) change the form of the property by reinvestment;
> (4) make gifts such as were ordinarily made while both spouses were alive.

What the survivor cannot do is 'give away any considerable portion of [the property] or do anything else with it that would be inconsistent with the spirit or obvious intent and purpose of the agreement.' "

It is well established that "[a] party on appeal cannot predicate error on actions [of the trial court] committed pursuant to his stipulation and acquiescence." (*Ziebell v. Board of Trustees* (1979), 73 Ill. App. 3d 894, 897, 392 N.E.2d 101.) "[A] party who has induced the trial court to make an error, or acquiesced in its making or requested that it be made, cannot be heard on appeal to assign that same matter as error." (*In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 341, 417 N.E.2d 220; see also *Gibson v. State Farm Mutual Automobile Insurance Co.* (1984), 125 Ill. App. 3d 142, 148, 465 N.E.2d 689.) Since the Thomas children agreed before the trial court that the rule enunciated in *Moline National Bank* applied to the facts of this case, and further agreed that *Moline National Bank* pertained to the scope

of a life estate tenant's powers where power of sale was recognized, the Thomas children cannot now claim error in the ruling of the trial court with which they agreed and acquiesced. We therefore conclude that they have waived any claim that Mrs. Thomas' life estate interest included no power of sale.

■ The Thomas children further contend that the trial court's order was erroneous because it did not specify that Mrs. Thomas may only use reasonable portions of the principal for her support and ordinary expenditures. This argument, in our view, finds error in a failure to overstate the obvious. Based upon our understanding of the jurisprudence in this State which applies to the powers of a life estate tenant who may dispose of the property taken, we find no error in the trial court's ruling. Accordingly, we affirm that portion of the trial court's judgment.

II

The second matter of dispute presented for our resolution is whether Mrs. Thomas was obligated to account to her children for her disposition of any property, and if so to what extent she could be ordered to do so.

The Thomas children present a somewhat novel argument regarding this question. They claim that they do not seek an accounting *per se* but only as much information as would be necessary for them to be assured that Mrs. Thomas properly exercises her powers over the property and for them to be able to make adequate estate planning of their own interests.

Mrs. Thomas contends that she has no present duty to account to her children; accordingly, she requests that the trial court's judgment be modified such that she would not be ordered to furnish them with an annual inventory of the securities held in her self-declaration of trust with FNB.

■ Illinois courts have traditionally permitted a remainderman to seek an accounting from a life estate tenant where there was an allegation of fraud or malfeasance. (*Bender v. Bender* (1920), 292 Ill. 358, 127 N.E. 22; *Thompson v. Adams* (1903), 205 Ill. 552, 69 N.E. 1; *Gaston v. Hamilton* (1982), 108 Ill. App. 3d 1145, 440 N.E.2d 190; *Keats v. Cates* (1968), 100 Ill. App. 2d 177, 241 N.E.2d 645; *Nielsen v. Duyvejonck* (1968), 94 Ill. App. 2d 224, 236 N.E.2d 743.) It would appear, however, that in the absence of fraud, mismanagement, or some other similar form of misconduct, Illinois courts have limited the relief available to a remainderman to that of an order compelling the life estate tenant to post a surety bond. (*Quigley v. Quigley* (1938), 370 Ill. 151,

18 N.E.2d 186; *Gahan v. Golden* (1928), 330 Ill. 624, 162 N.E. 164; *Buckingham v. Morrison* (1891), 136 Ill. 437, 27 N.E. 65.) The decision to order such surety, and the amount thereof, has been held to be within the trial court's sound discretion. *Quigley v. Quigley* (1938), 370 Ill. 151, 18 N.E. 2d 186.

■ The trial court found no evidence of wrongdoing by Mrs. Thomas in her management of the estate. Based upon our review of the record, we can find no error in this determination, nor in the court's conclusion that there were no genuine issues of any material fact on this question. Without such a finding of wrongdoing, however, there were no grounds to order that Mrs. Thomas account to her children for her disposition of any of the property.

The Thomas children do not argue on appeal that Mrs. Thomas has actually engaged in any act of fraud or malfeasance. Instead they claim that her actions thus far support their apprehension of possible mismanagement by her in the future. It is on this basis that they seek, not "an accounting *per se*," but nevertheless something akin thereto. Even assuming, *arguendo*, that Mrs. Thomas' actions placed her children in reasonable apprehension of future fraud or mismanagement, nevertheless this was insufficient to order her to account.[7]

Although the Thomas children claim that they do not seek an accounting *per se*, their brief before this court nevertheless contains argument that Mrs. Thomas, as life estate tenant, had a duty to account to her children, vested remaindermen to the property. This contention is made by the Thomas children in the context of their claim that Mrs. Thomas' interest was limited to a life estate tenancy with no power of sale. Specifically, they argue that "[i]t should be remembered that the remainder beneficiaries under a joint and mutual will contract are in the position of beneficiaries of a trust which they can enforce by proceedings in equity. *Curry v. Cotton*, 356 Ill. 538, 549 (1934)."

We first note that the Thomas children's reliance upon *Curry v. Cotton* (1934), 356 Ill. 538, 191 N.E. 307, is misplaced, as it does not stand for the broad proposition that a life estate tenant has a duty to account to remaindermen in all instances. Instead, *Curry* held that where a life estate tenant had perpetrated a fraud upon the power of sale vested in the tenant, the court would impose a constructive trust

---

[7]Instead, such allegations might at most support a request that she post surety at a certain amount. The Thomas children did not request such relief, however, and we do not imply that this remedy, if requested, would be justified on the basis of the record before us.

over the property which could be enforced by a proceeding in equity. (356 Ill. 538, 549, 191 N.E. 307.) As no constructive trust was requested or imposed over the Thomas property, *Curry* is inapposite.

Further, our research has discovered no Illinois case which holds that a life estate tenant has a fiduciary duty to the holder of the remainder interest in the property as a matter of law and in the absence of the imposition of a constructive trust or some proof of fraud or misfeasance. Instead, Illinois courts have only recognized more limited duties of the life estate tenant, such as the duties "to prevent waste (*Guhl v. Guhl* (1941), 376 Ill. 100, 111, 33 N.E.2d 185), not to manipulate the title so as to defeat the remaindermen (*Cales v. Dressler* (1924), 315 Ill. 142, 148), and not to transfer the property for an inadequate consideration (*De Groot v. Kohr* (1971), 2 Ill. App. 3d 924, 927)." *Gaston v. Hamilton* (1982), 108 Ill. App. 3d 1145, 1149-50, 440 N.E.2d 190.

Based on the foregoing, we conclude that Mrs. Thomas had no present duty to account to her children on her management or disposition of the property. Accordingly, we reverse that portion of the trial court's order which directed Mrs. Thomas to account to her children with regard to the securities she placed in a self-declaration of trust, with directions that any reference thereto be stricken from the order.

### III

Because we conclude that Mrs. Thomas had no present duty to account to her children, we affirm without discussion the order of the trial court which dismissed FNB as a party defendant.

### IV

■ Robert argues that the trial court's order granting Mrs. Thomas' motion for summary judgment upon her counterclaim was erroneous because a disputed issue of fact was raised by the parties' pleadings as to whether the promissory note was delivered on a condition which has not yet occurred.

Robert's verified answer stated that the note was delivered on the condition that he sell his home in Downers Grove and that he has been unable to sell the house despite his best efforts to do so. Mrs. Thomas' sworn reply denied that the note was conditionally delivered.

Robert argues first that his statements of conditional delivery should have been considered by the trial court because the terms of the note were ambiguous. It provided, in relevant part:

> "FOR VALUE RECEIVED, the receipt of which is hereby expressly acknowledged by the execution hereof, the under-

signed ROBERT C. THOMAS, promises to pay to the order of A. LaVERNE THOMAS, at Route 1, Hickory Avenue, Lemont, Illinois 60439, or at such other place as the holder hereof may from time to time designate in writing, the principal sum of $80,000.00, plus interest at the rate of 6% per annum on the balance of principal remaining unpaid from time to time, all in installments as follows: the sum of $1,200.00 as interest on February 13, 1980 and a like sum on the 13th day of May and August, 1980; the sum of $1,200.00 plus the entire then principal balance due hereunder, if any, shall be due on November 13, 1980. Anything herein to the contrary notwithstanding if, during the period in which all or any portion of the indebtedness under this Note remains unpaid, the maker hereof shall sell his interest in the properties commonly known as 7900 Winter Circle, Downers Grove, Illinois and/or 52 West 65th Street, Westmont, Illinois, then and in those events, that portion of the principal balance hereunder shall be due and payable equal to the sum of any net proceeds received by the maker hereof in connection with such sales."

We find no ambiguity in these terms, however. The clear intent of the note was to require accelerated payments on the loan if Robert sold his home in Downers Grove before November 13, 1980. We therefore find Robert's argument in this regard without merit.

■ Robert further claims that extrinsic evidence was admissible to prove conditional delivery of the note. In support he cites *inter alia* to a comment following section 3—119 of the Illinois Commercial Code (Ill. Ann. Stat., ch. 26, par. 3—119, Illinois Code comment, at 84 (Smith-Hurd (1963)), which states, "Oral evidence on these matters [conditional delivery] will also be admissible under the Code."

We find Robert's contention unfounded. "[P]arol evidence is * * * inadmissible to vary or contradict the clear written provisions of an integrated contract * * * [or] to show that an obligation under a note, absolute on its face, is conditional." (*Main Bank v. Baker* (1981), 86 Ill. 2d 188, 199, 427 N.E.2d 94.) Furthermore, section 3—119 of the Code "follows the parol evidence rule that prior or collateral oral agreements are inadmissible to contradict the express terms of a written instrument." *Main Bank v. Baker* (1981), 86 Ill. 2d 188, 201-02, 427 N.E.2d 94.

The promissory note here expressly provided that sale of the Downers Grove property would accelerate payments of the principal

due on the loan. Robert's claim that failure to sell the property deferred his obligations altogether is inconsistent with such acceleration requirements; the occurrence of an event cannot both accelerate payments and yet defer any payment whatsoever. Moreover, the note expressly provided that payment of the entire principal balance was due by November 13, 1980. Any extrinsic evidence of alleged conditional delivery to defer payment was contradictory to this term and consequently inadmissible. We therefore find no basis for reversal of the trial court's judgment.

For the reasons stated, the orders of the trial court are affirmed in part, reversed in part, and the cause remanded with directions.

Affirmed in part; reversed in part; cause remanded, with directions.

JOHNSON and LORENZ*, JJ., concur.

*Justice Romiti, who participated at oral arguments, has since died. Justice Lorenz has listened to the tape of the oral arguments and reviewed the briefs and record.